IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARY ANN ANDERSON,                          3:12-cv-00727-BR

         Plaintiff,                         OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

         Defendant.


RICHARD A. SLY
209 S.W. Oak Street
Suite 102
Portland, OR 97204
(503) 226-1227

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case. No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**LINDA S. ZISKIN**
Ziskin Law Office
P.O. Box 753833
Las Vegas, NV 89136
(503) 889-0472

           Attorneys for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**KATHRYN ANN MILLER**
**MATHEW W. PILE**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2240
(206) 615-3760

           Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Cary Ann Anderson seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) payments under Title XVI.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  For the reasons that

2 - OPINION AND ORDER

follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for DIB and SSI on August 10, 2007.  Tr. 25.  Plaintiff's last date insured was June 30, 2006.  Tr. 25.  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on December 17, 2009.  Tr. 25.  At the hearing Plaintiff was represented by an attorney.  Plaintiff, lay-witness Patty Jo Totten, and a vocational expert (VE) testified at the hearing. Tr. 25.

The ALJ issued a decision on January 12, 2010, in which he found Plaintiff is not entitled to benefits.  Tr. 22.  That decision became the final decision of the Commissioner on February 12, 2012, when the Appeals Council denied Plaintiff's request for review.  Tr. 1.

## BACKGROUND

Plaintiff was born on February 14, 1968, and was 41 years old at the time of the hearing.  Tr. 169.  Plaintiff completed high school.  Tr. 179.  Plaintiff has past relevant work

3 - OPINION AND ORDER

experience as a housekeeper.  Tr. 35, 53.

Plaintiff alleges disability since March 21, 2000, due to post-traumatic stress disorder (PTSD), attention-deficit disorder (ADD), seasonal-affective disorder (SAD), agoraphobia, anxiety, panic disorder, and depression.  Tr. 78, 83, 174.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 28-29.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity [(SGA)] by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a "mere scintilla" of evidence but less than a preponderance. *Id*. (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

## I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P,

appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine

whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## II.  Evaluation of Drug and Alcohol Abuse

A claimant is not considered disabled if drug addiction or alcoholism is a contributing factor material to the determination of disability.  42 U.S.C. § 1382c(a)(3)(J).  *See also Monan v. Astrue*, 377 F. App'x 629, 630 (9th Cir. 2010).  Substance abuse is a material factor when the claimant's limitations would not be disabling if the claimant stopped using drugs or alcohol.  20 C.F.R. §§ 404.1535(b), 416.935(b).

Thus, if the claimant is found to be disabled and there is medical evidence of substance abuse, the ALJ must determine whether drug addiction or alcoholism "is a contributing factor material to the determination of disability."  20 C.F.R.

§§ 404.1535(a), 416.935(a).  To assess the materiality of drug or alcohol abuse, an ALJ must first conduct the five-step inquiry without distinguishing the separate impact of alcoholism or drug addiction.  *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (citing *Bustamante v. Astrue*, 262 F.3d 949, 954 (9th Cir. 2001)).

    If the ALJ finds the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits.  If the ALJ finds the claimant is disabled and there is medical evidence of her drug addiction or alcoholism, the ALJ should proceed under § 404.1535 or § 416.935 to determine whether the claimant would be disabled if he stopped using alcohol or drugs.  *Bustamante*, 262 F.3d at 955 (internal quotation omitted).  *See also Parra*, 481 F.3d at 746-47.  The ALJ must make a second five-step sequential inquiry to "evaluate which of [the claimant's] current physical and mental limitations, upon which [the ALJ] based [the] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling."  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  *See also Parra*, 484 F.3d at 474.  In other words, the ALJ must perform the sequential five-step inquiry a second time without taking the claimant's substance abuse into account to determine whether drug addiction or alcoholism "is a contributing factor material to the determination of disability."  20 C.F.R. §§

9 - OPINION AND ORDER

404.1535(a), 416.935(a).

The claimant's substance abuse is a "contributing factor material" to the disability determination when the claimant's remaining limitations would not be disabling if the claimant stopped using drugs or alcohol.  20 C.F.R. §§ 404.1535(b), 416.935(b).  If substance abuse is a "contributing factor material" to the disability determination, a claimant is not considered disabled.  42 U.S.C. § 1382c(a)(3)(J).  *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  In such materiality determinations, "the claimant bears the burden to prove that drug addiction or alcoholism is not a contributing factor material to his disability."  *Id.*

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since March 21, 2000, her alleged onset date.  Tr. 27.

At Step Two the ALJ found Plaintiff has the severe impairments of "sciatica; a depressive disorder; a panic disorder with agoraphobia; alcohol dependence; cannabis abuse; and methamphetamine dependence, in remission."  Tr. 27.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 29.  The ALJ found Plaintiff can perform medium

work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the following additional limitations: She should not be exposed to hazards or unprotected heights and is limited to work involving "simple, routine tasks with less than occasional interaction with the public and only brief and structured interaction with coworkers." Tr. 30.

At Step Four the ALJ concluded Plaintiff was capable of performing her past relevant work as a housekeeper. Tr. 35. Accordingly, the ALJ found Plaintiff was not disabled from March 21, 2000, through January 12, 2010. Tr. 35.

Because of the ALJ's conclusions at Step Four, he did not reach Step Five of the sequential analysis.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed at Step Two to consider Plaintiff's alleged disabilities of attention deficit hyperactivity disorder (ADHD), PTSD, and borderline personality disorder;[2] (2) improperly rejected the opinion of examining psychologist Molly C. McKenna, Ph.D.; (3) improperly excluded from Plaintiff's RFC limitations set forth by Dr. McKenna; (4) and improperly rejected the lay-witness testimony of Patty Jo Totten and the written statement of Danny

---

[2] The Court notes Plaintiff did not allege the impairments of ADHD and borderline personality disorder in her applications for benefits. Tr. 78, 83, 174.

11 - OPINION AND ORDER

Elliot.

## I.   The alleged error by the ALJ at Step Two was harmless

As noted, at Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).  *See also Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005)*.*  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(a),(b), 416.921(a),(b). Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . .  [T]he severity regulation is to do no more than allow the Secretary to deny

> benefits summarily to those applicants with
> impairments of a minimal nature which could never
> prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).

As noted, the ALJ found Plaintiff has the severe impairments of "sciatica; a depressive disorder; a panic disorder with agoraphobia; alcohol dependence; cannabis abuse; and methamphetamine dependence, in remission." Tr. 27. Plaintiff, however, asserts the ALJ erred at Step Two when he did not find Plaintiff has impairments of ADHD, PTSD, and borderline personality disorder.[3]

The Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at Step Two. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step Two was resolved in claimant's favor). Because the ALJ resolved Step Two in Plaintiff's favor, the Court concludes any error by the ALJ in failing to identify ADHD, PTSD, and borderline personality disorder as severe impairments is harmless.

---

[3] As noted, the Court points out that Plaintiff did not, in any event, allege the impairment of ADHD or borderline personality disorder in her applications for benefits. Tr. 78, 83, 174.

13 - OPINION AND ORDER

**II.  Medical opinion testimony of Dr. McKenna**

Plaintiff contends the ALJ erred when he did not give clear and convincing reasons for rejecting the opinion of Dr. McKenna, examining psychologist.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  Generally the more consistent an opinion is with the record as a whole, the more weight an opinion should be given.  20 C.F.R. § 416.927(c)(4).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the

nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

Dr. McKenna performed a Comprehensive Neuropsychological Evaluation of Plaintiff on July 15, 2008, which included a Mental Residual Functional Capacity Report.  Tr. 564-73.  Dr. McKenna noted "[t]he results of neuropsychological testing are generally mixed.  Validity testing suggested that [Plaintiff] may not have been putting forth her best effort."  Tr. 570.  Dr. McKenna specifically pointed out that Plaintiff's retention scores on the Test of Memory Malingering (TOMM), an instrument sensitive to effort and motivation, were "below expected levels," which "raise serious questions about her motivation to perform well on other tests, and create concern about the validity of her scores on other tests."  Tr. 569.  Dr. McKenna, nevertheless, concluded:

> At this time the primary impediment to placing [Plaintiff] in gainful employment are her consistent depressive symptoms, severe anxiety, recurrent panic attacks, emotional volatility, and preference for social isolation.  She also continues to abuse alcohol and marijuana, despite experiencing legal difficulty because of her use.

Tr. 570.

Dr. McKenna also concluded Plaintiff's "anxiety is sufficiently severe that it prevents her from . . . seeking or

15 - OPINION AND ORDER

maintaining gainful employment on her own." Tr. 571.  In the

Mental Residual Function Capacity Report, Dr. McKenna found

Plaintiff was "Markedly Limited" in the following respects:

> 1.   The ability to maintain attention and
>       concentration for extended periods.
>
> 2.   The ability to perform activities with a schedule,
>       maintain regular attendance, and be punctual with
>       customary tolerances.
>
> 3.   The ability to work in coordination with or
>       proximity to others without being distracted by
>       them.
>
> 4.   The ability to complete a normal workday and
>       workweek without interruptions from
>       psychologically based symptoms and to perform at a
>       consistent pace without an unreasonable number and
>       length of rest periods.
>
> 5.   The ability to interact appropriately with the
>       general public.
>
> 6.   The ability to accept instructions and respond
>       appropriately to criticism from supervisors.
>
> 7.   The ability to get along with co-workers or peers
>       without distracting them or exhibiting behavioral
>       extremes.

Tr. 573.

### A.   Dr. McKenna's opinion as to Plaintiff's limitations, including those arising from substance abuse

The ALJ noted Dr. McKenna found Plaintiff "'markedly

limited' in several areas of cognitive and social functioning

consistent with the inability to sustain work activity on a

regular, full-time basis." Tr. 34.  The ALJ, however, gave

little weight to Dr. McKenna's opinion, in part, because even

16 - OPINION AND ORDER

though Dr. McKenna noted Plaintiff's alcohol and marijuana abuse, she "did not indicate the extent to which the limitations reported were due to substance abuse." Tr. 34. As noted, however, when substance abuse is involved, the ALJ must first engage in the five-step sequential inquiry to determine whether the plaintiff is disabled when taking into account the limitations caused by plaintiff's substance abuse. Thus, the ALJ may not discount the opinion of an examining physician on the basis of substance abuse when performing the initial five-step process.

The record reflects even though Dr. McKenna found Plaintiff's substance abuse is a limitation, she concluded "the *primary* impediments to placing [Plaintiff] in gainful employment are her consistent depressive symptoms, severe anxiety, recurrent panic attacks, emotional volatility, and preference for social isolation." Tr. 570 (emphasis added). In addition, the ALJ did not identify in the record the opinion of any treating or examining physician who undermined Dr. McKenna's opinion by finding Plaintiff's limitations are necessarily caused by her substance abuse. The Court notes Mental Health Specialist Greg Mulkey performed an initial mental-health assessment of Plaintiff in February 2002 and stated it was unclear how much of Plaintiff's symptomology may be linked to substance abuse. Tr. 367.

17 - OPINION AND ORDER

Although the ALJ noted Sally Hingley, L.C.S.W., opined in
2000 that "much of [Plaintiff's] symptomology would improve if
she were fully abstinent from alcohol and marijuana use,"
Hingley, however, also noted Plaintiff probably has a
"predisposition to be overly anxious" and "a biological tendency
to be overanxious and overreactive."  Tr. 250.

**B.   Dr. McKenna's reliance on Plaintiff's subjective
     reports as to her symptoms**

The ALJ also gave little weight to Dr. McKenna's opinion on
the basis that "Dr. McKenna has uncritically accepted the
allegations of the claimant regarding her reports of symptoms
despite her performance on the MMPI-2 which resulted in an
invalid profile and her performance on the [TOMM] which showed a
clear exaggeration of memory impairment."  Tr. 34.  The ALJ did
not identify in the record any opinion of a treating or examining
physician that contradicts Dr. McKenna's opinion.

An ALJ may reject a physician's opinion if it is based
entirely on the claimant's subjective complaints and not
supported by clinical evidence in the record.  *Bayliss v.
Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  "[Q]uestioning
the credibility of the patient's complaints where the doctor does
not discredit those complaints and supports [her] ultimate
opinion with [her] own observations" is not a legally sufficient
reason for rejecting a physician's opinion.  *Ryan v. Comm'r of
Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  Although

18 - OPINION AND ORDER

Dr. McKenna noted Plaintiff's medical history and symptoms as reported to her by Plaintiff in the "Mental Status/Behavioral Observations" section of her report, Dr. McKenna also recorded her personal observations of Plaintiff and found "[Plaintiff's] psychomotor behavior was mildly agitated.  She sometimes rocked, jiggled her leg up and down . . . .  She was visibly anxious throughout the majority of the appointment.  She reported her mood as anxious, and her affect was congruent."  Tr. 567.

In addition, as Plaintiff points out, it appears Dr. McKenna took Plaintiff's test scores into account when determining Plaintiff's limitations.  Dr. McKenna specifically noted Plaintiff's MMPI-2 test score "suggests the possibility that [Plaintiff] has exaggerated her problems or over-reported her symptoms of psychopathology."  Tr. 569.  Dr. McKenna declined to interpret Plaintiff's low test scores because they "cannot be interpreted as indicative of consistent or reliable deficit." Tr. 570.

Dr. McKenna concluded Plaintiff was markedly limited in her ability to maintain regular attendance, to be punctual, and to complete a normal workday, which is reflected in Plaintiff's history of being unable to maintain and to attend regular meetings and appointments.  Tr. 337-38, 346, 637-42, 644-45, 648.

Dr. McKenna's conclusions as to Plaintiff's inability to sustain work activity on a regular, full-time basis are

uncontradicted by the report of M. John Givi, Ph.D, Psy.D., who
performed a consultative examination of Plaintiff for Disability
Determination Services (DDS)[4] in February 2009 and diagnosed
Plaintiff with panic disorder with agoraphobia.  Dr. Givi stated
Plaintiff's disorder "shows itself in the form of avoiding
people, leaving the house only when needed, panic attacks,
sweating and nervousness" and was a "barrier to employment."
Tr. 505-06.  The ALJ, however, gave greater weight to the opinion
of other DDS psychological consultants who concluded Plaintiff
"remains able to understand, remember, and carry out short
instructions and consistently perform simple, repetitive tasks,
and that she should not engage in frequent close public contact
and interaction with co-workers should be brief and structured."
Tr. 34-35, 524.

    The ALJ also noted Dr. McKenna reported Plaintiff had the
limitations of social phobia, dysthymia, and panic disorder since
Plaintiff's adolescence, which the ALJ found to be "clearly
inconsistent with [Plaintiff's] demonstrated ability to engage in
substantial gainful activity as a housekeeper and motel cleaner
prior to her claim of disability beginning on March 21, 2000."
Tr. 34.  The ALJ, however, did not identify any evidence in the

_____

    [4] DDS is a federally-funded state agency that makes
eligibility determinations on behalf and under the supervision of
the Social Security Administration pursuant to 42 U.S.C.
§ 421(a).

record that reflects the intensity of the symptoms of Plaintiff's alleged impairments were the same before and after the date of alleged onset.  The Court notes the record, in fact, shows the intensity of Plaintiff's symptoms have fluctuated.  For example, Dr. McKenna noted Plaintiff's "symptoms appear to have intensified since her boyfriend, Greg, died several years ago." Tr. 570.

The Court concludes on this record that the ALJ erred when he discounted Dr. McKenna's opinion as to Plaintiff's limitations at least in part based on Plaintiff's substance abuse when the ALJ engaged in his initial sequential analysis.  The Court also concludes the ALJ erred when he discounted Dr. McKenna's opinion for the other reasons set out above without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

## II.  Plaintiff's RFC

In addition to discounting Dr. McKenna's opinion, the ALJ suggests Plaintiff's "ability to work is limited primarily by substance abuse rather than symptoms of anxiety as she alleges." Tr. 33.

On this record the Court concludes the ALJ erred by not properly evaluating Plaintiff's alleged limitations when determining her RFC because he did not assess Plaintiff's RFC after engaging in both of the required sequential analyses to

determine whether Plaintiff is disabled based on all of her impairments and, if so, whether substance abuse "is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a).  *See also Parra*, 481 F.3d at 746-47; *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

### III. Lay-witness testimony

Plaintiff contends the ALJ erred when he discredited the testimony of Patty Jo Totten and Danny Elliot.

When determining whether a claimant is disabled, the ALJ must consider lay-witness testimony concerning a claimant's limitations and ability to work. *Molina*, 674 F.3d at 1114.  If the ALJ discounts the testimony of lay witnesses, he "must give reasons that are germane to each witness." *Id.* (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).  *See also Lester,* 81 F.3d at 834 (improperly rejected lay-witness testimony is credited as a matter of law).

Totten testified at the hearing that Plaintiff is typically frightened and anxious. Tr. 57.  Totten testified she didn't know much about Plaintiff's alcohol and drug use and had never seen her "stoned or drink [*sic*]." Tr. 59.  The ALJ noted Totten testified she hadn't seen Plaintiff recently and Plaintiff had only been to Totten's new home in Gresham, Oregon, once because Plaintiff does not like strange environments. Tr. 31.  The ALJ

pointed out that Totten testified she did not have any concerns regarding Plaintiff's ability to raise her son and stated Plaintiff is a "great Mom."  Tr. 31.  The ALJ also noted Totten stated in his written statement that Plaintiff becomes distracted at times and has difficulty with memory and completing tasks, understanding and following instructions, and getting along with others.  Tr. 34, 193-95.

The ALJ also pointed out that Elliot stated Plaintiff takes her son to the park or outside to play five days a week and is able to go outside when needed.  The ALJ noted this was inconsistent with Plaintiff's allegations of her inability to leave the house.  Tr. 33, 34.

Although the ALJ gave Totten's testimony and Elliott's written statement some weight, he did not give them "full weight regarding the extent of the claimant's anxiety symptoms because they did not mention or are not fully aware of her continued substance abuse."  Tr. 34.

Although the ALJ provided reasons for not giving full weight to Totten's testimony and Elliot's written statement with respect to Plaintiff's anxiety symptoms, the ALJ erred in his initial assessment of their testimony and statements by discounting them as to Plaintiff's anxiety symptoms because they failed to address Plaintiff's substance abuse.

**REMAND**

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *See, e.g.*, *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012). The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The Ninth Circuit has established a three-part test for determining when evidence should be credited and an immediate award of benefits directed. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See, e.g.*, *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

24 – OPINION AND ORDER

On this record the Court concludes further proceedings are necessary. Here the ALJ did not conduct the initial sequential analysis required to determine whether Plaintiff is disabled based on all of her impairments and then engage in a second sequential analysis to determine whether substance abuse is a contributing factor material to the disability. Instead the ALJ initially heavily discounted Plaintiff's impairments and her resulting limitations on the basis of her substance abuse.

Accordingly, the Court remands this matter to the ALJ for further proceedings (1) to conduct an initial five-step sequential inquiry to determine whether Plaintiff is disabled based on all of her impairments; (2) to conduct a second, five-step sequential inquiry if the ALJ finds Plaintiff is disabled based on all of her impairments to determine whether substance abuse is a contributing factor material to the determination of disability; and (3) to reconsider the opinion of Dr. McKenna and the credibility of lay-witness testimony and statements in light of the ALJ's renewed analysis.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of

42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 7th day of October, 2013.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge